# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | SA-10-CR-64-XR |
| | § | |
| JULIO CESAR MONTALVO-RANGEL | § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress (docket no. 20) and supplemental motion (docket no. 26).

## Background

Defendant is charged in an indictment with illegal re-entry in violation of 8 U.S.C. § 1326.

On January 2, 2010, San Antonio Police Officer Adrian Owens was traveling behind Defendant's vehicle in downtown San Antonio. Officer Owens was assigned on that date to the Tactical Response Unit, which attempts to target violent crimes in areas that have a high level of crime and the tourist areas of the City. He began his shift at 7:00 p.m. that night.

While patrolling in his vehicle, Officer Owens testified that he routinely enters license plate numbers into his MDT[1] to determine if any active warrants

---

[1] A "MDT" is a Mobile Data Terminal or on-board computer and communications systems that is located inside a SAPD patrol car.

are displayed on the MDT screen. He testifies that on average he "runs" about 50 license plate numbers into his MDT every shift. Officer Owens testified that if he can't clearly see a license plate, he is unable to "run" the number into the MDT. Otherwise, he attempts to "run" "every single vehicle that I can."

At about 7:45 p.m., when his patrol car was behind the vehicle driven by Defendant, Officer Owens ran the license plate number into his MDT. The name of the vehicle's registered owner appeared. If there is an active arrest warrant for the owner of the vehicle, that arrest warrant information is also displayed on the computer screen. When the vehicle license plate number was entered into the MDT, Defendant's name, sex, date of birth, race/ethnicity, height, weight, and personal information (presence of any tattoos, facial hair, etc.) appeared on the screen with a notation that there was an active arrest warrant for DWI. Officer Owens testified that he and his partner were able to verify that a Hispanic male was driving the vehicle and that as a result they initiated a traffic stop of Defendant's vehicle.[2] Officer Owens requested a driver's license from the Defendant and the Defendant produced his license. Officer Owens confirmed that Defendant was the person for whom the arrest warrant was sought and arrested him.

It is agreed that prior to the MDT indicating the arrest warrant information, the police officers had no reasonable suspicion to stop the vehicle.

---

[2] Officer Owens further testified that if, for example, the arrest warrant was for a Black male, he would not initiate a traffic stop if there were only White and Hispanic males inside the vehicle. Likewise, if the arrest warrant was for a male, but the vehicle only had females, he would not initiate a stop of the vehicle.

The Defendant violated no traffic laws while Officer Owens observed him. Officer Owens testified that during his stop and arrest of the Defendant, he was not aware of any immigration issue regarding the Defendant.

When the Defendant was taken to the Bexar County jail, at some point agents from the Immigration and Customs Enforcement ("ICE") conducted a "sweep" of the jail and encountered the Defendant.

On January 4, 2010, ICE Agent Norman Carrillo interviewed the Defendant for "biological" information.[3] Agent Carrillo simultaneously completed Form I-213[4] as a result of the interview. Agent Carrillo obtained information from the Defendant, such as when he last re-entered the United States, the time and manner of entry and whether he was present without admission.[5]

*After* the interview and Form I-213 was completed, Agent Carrillo *then* administered *Miranda* warnings to the Defendant and completed a Form I-215B. In part, Form I-215B states that the Defendant "has informed me that he desires to take my sworn statement regarding my illegal re-entry into the United States." But, the Form I-215B also clearly indicates that the Defendant invoked his right to counsel and declined to answer any questions.[6]

---

[3] Testimony of ICE Agent Pardo, Suppression Hearing at pp. 34-36, 38.

[4] Record of Deportable/Inadmissible Alien also known as the INS arrest report.

[5] *Id.* at pp. 40-42.

[6] The Court finds very troubling what appears to be a standard practice of ICE agents to interrogate individuals first and provide *Miranda* warnings afterward.

Also at issue in this case is the validity of the arrest warrant relied upon by Officer Owens. On September 28, 2008, the Defendant was charged in Bexar County Court at Law Number 4, cause number 265615, with operating a motor vehicle in a public place while intoxicated. That case was dismissed on December 9, 2008. Apparently, a new information was filed on January 9, 2009, based on the same DWI offense. On January 9, 2009, the arrest warrant also issued that Officer Owens relied upon in arresting the Defendant. Helping to confuse the issue further, a second arrest warrant issued on January 25, 2010.

**Defendant's Motion and Supplemental Motions to Suppress**

Defendant agues that he was stopped and arrested without probable cause or reasonable suspicion. He further argues that he was improperly interrogated by ICE agents.

**Analysis**

A.   January 4, 2010 Interview

The Government apparently concedes that any interview of the Defendant conducted on January 4, 2010 and the Forms I-213 and I-215B should be suppressed inasmuch as the Defendant was not properly given his *Miranda* warnings prior to the interview.[7] Defendant's motion to suppress the January 4, 2010 interview and the Forms I-213 and I-215B is GRANTED.

B.   January 2, 2010 Stop and Arrest

The Government argues that a driver of a vehicle has no reasonable

---

[7] Government's Advisory to the Court, docket no. 32.

expectation of privacy in the license plate number of such vehicle. Accordingly, the Government argues that Officer Owens did nothing impermissible in running the license plate number into the MDT. Further, the Government argues that Officer Owens had reasonable suspicion to stop Defendant's vehicle and arrest him based upon the January 9, 2009 arrest warrant.

The Government relies upon *U.S. v. McBrown*, 149 F.3d 1176 (5th Cir. 1998). In *McBrown*, the Fifth Circuit held that the district court properly denied the Defendant's motion to suppress. McBrown was stopped after a police officer ran the car's license plate through a computer, which showed that there were outstanding arrest warrants on the driver of the vehicle for traffic violations. The police officer pulled over the vehicle based on this information. The Fifth Circuit held that the police officer had reasonable suspicion to stop the car because his computer showed that the driver had outstanding arrest warrants. The Fifth Circuit further noted that reasonable suspicion may be based on personal observation or other information, so long as the information possesses "an indicia of reliability." *Id.* at *10.

In this case, Defendant attempts to argue that the computerized data was unreliable because there should not have been an active arrest warrant for the Defendant at that time. However, Officer Owens acted in good faith in executing the warrant. Any mistake regarding the warrants was not made by the police department. Rather, it appears that the Bexar County prosecutor's office was filing, dismissing and re-filing complaints in the county courts. *See, e.g., Herring*

*v. U.S.*, 129 S. Ct. 695 (2009) (exclusionary rule did not apply where the arresting officers relied on a computer search that showed the defendant had an outstanding warrant, even though it was later discovered that the warrant had previously been recalled); *Arizona v. Evans*, 514 U.S. 1 (1995) (exclusionary rule does not require suppression of evidence seized in violation of the Fourth Amendment where the erroneous information resulted from clerical errors of court employees).

The Defendant further argues that *McBrown* is an unpublished, nonprecedential opinion and *McBrown* should not be relied upon inasmuch as it overstates existing law in this area. Specifically, Defendant argues that *McBrown* relied upon *United States v. McDonald*, 606 F.2d 552, 553–54 (5th Cir. 1979), but the arrest in *McDonald* did not rest solely on an NCIC arrest report. It rested on police surveillance, and on information that allowed the officer to be reasonably sure that he was seizing the person named in the NCIC arrest report.

Defendant agues that even if the police officers could run a license plate check, the testimony in this case shows that the officers knew nothing more than that the man named in the warrant was Hispanic and so was the man driving the car. Defendant argues that is insufficient to justify even an investigatory stop.

This precise issue does not appear to have been addressed by the Fifth Circuit. A review of cases in other jurisdictions reveals that in *People v. Khoshaba*, 2006 WL 932408 (Mich. App. 2006), a state appellate court held that

6

"because drivers do not have a reasonable expectation of privacy in their openly displayed license plates, the police may run a computer check of the license plate without observing a traffic violation. The police may also assume that the driver of a vehicle is the registered owner, unless they have evidence to the contrary." Id. at *2.  A similar result was reached in *State v. Davenport*, 2004 WL 2340081 (Ohio App. 2004) ("Because the officers had information that the owner of the car had an active warrant out for his arrest, and because they were justified in presuming that the owner was the driver of the car, they were also justified in stopping the car.  As required by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, they had a reasonable suspicion that the driver of the car had been engaged in criminal activity, that is, the burglary for which the warrant existed.").

In *U.S. v. Diaz-Castaneda*, 494 F.3d 1146 (9th Cir. 2007), the Ninth Circuit affirmed the denial of a motion to suppress on facts very similar to this case.  The Ninth Circuit held that the police officer in that case "knew after conducting the license plate check that the registered owner of the truck was a male with a Hispanic surname and a suspended license, and then observed that the vehicle's actual driver was also a Hispanic male.  He therefore had probable cause to believe that the traffic violation of driving with a suspended license was taking place, and the ensuing stop was constitutional regardless of [the police officer's] subjective intentions...." *Id*. at 1152.

In the facts of this case, Officer Owens testified that after running the

7

license plates in his MDT, he knew that the registered owner of the vehicle was a male with a Hispanic surname and he observed that the vehicle's actual driver was also a Hispanic male. The Court finds the above cases persuasive and also concludes that the police may also assume that the driver of a vehicle is the registered owner, unless they have evidence to the contrary.

Defendant's motion to suppress on this issue is DENIED.

C.   A-File

The Defendant's request for suppression of the Defendant's "A-file" is denied, pursuant to *U.S. v. Pineda-Chinchilla*, 712 F.2d 942 (5th Cir. 1983) (even assuming illegality of alien's arrest by United States customs agent, alien had no possessory or proprietary interest in INS file or documentary information contained in that file and thus had no standing to challenge its introduction into evidence). *See also U.S. v. Baeza-Castillo*, 72 Fed. Appx. 170 (5th Cir. 2003).

## Conclusion

Defendant's motion to suppress (docket no. 20) is GRANTED in part and DENIED in part.

It is so ORDERED.

SIGNED this 5th day of April, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE