# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | SA-10-CR-64 |
| § | |
| JULIO CESAR MONTALVO- § | |
| RANGEL | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant is charged in an indictment with illegal re-entry in violation of 8 U.S.C. § 1326(a).[1] On April 5, 2010, this Court entered an Order denying in part and granting in part Defendant's motion to suppress. *See* docket no. 34. On April 12, 2010, a bench trial was held in this case. The Defendant previously waived his right to a trial by jury. The Court enters the following findings of fact and conclusions of law:

1.  On January 2, 2010, San Antonio Police Officer Adrian Owens was traveling behind Defendant's vehicle in downtown San Antonio. While

---

[1] Section 1326(a) states: "Subject to subsection (b) of this section, any alien who-- (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both."

patrolling in his vehicle, Officer Owens routinely enters license plate numbers into his MDT[2] to determine if any active warrants are pending. Officer Owens ran the Defendant's license plate number into his MDT. The name of the vehicle's registered owner appeared, also noting that there was an active DWI arrest warrant for the owner of the vehicle. Officer Owens stopped Defendant's vehicle and requested a driver's license from the Defendant. The Defendant produced his license. Officer Owens confirmed that Defendant was the person for whom the arrest warrant was sought and arrested him.[3]

2. When the Defendant was taken to the Bexar County jail, at some point agents from the Immigration and Customs Enforcement ("ICE") conducted a "sweep" of the jail and encountered the Defendant.

3. On January 4, 2010, ICE Agent Norman Carrillo interviewed the Defendant for "biological" information. Agent Carrillo simultaneously completed Form I-213 as a result of the interview. Agent Carrillo obtained information from the Defendant, such as when he last re-entered the United States, the time and manner of entry, and whether he was present without admission. After the interview and Form I-213 were completed, Agent Carrillo *then* administered *Miranda* warnings to the Defendant and completed a Form I-215B. In part, Form I-215B states that the Defendant "has informed me that he desires to take my sworn statement regarding my illegal re-entry into the United States." But,

---

[2] A "MDT" is a Mobile Data Terminal or on-board computer and communications systems that is located inside a SAPD patrol car.

[3] Transcript of Motion to Suppress held on March 25, 2010.

2

the Form I-215B also clearly indicates that the Defendant invoked his right to counsel and declined to answer any questions.

4.  The Court suppressed the I-213 and I-215 taken in January 2010 because of the *Miranda* violation.

5.  On December 10, 2008, the Defendant was previously found in the United States. A Form I-215B was completed at that time. In that form the Defendant admitted he was a citizen of Mexico, that he entered the United States in February 2008, he was not inspected or admitted by an immigration officer, and he knew it was illegal for him to enter the United States in that manner. *See* Government Exhibit 1.[4]

6.  On January 13, 2009, an Immigration Judge ordered that the Defendant be removed from the United States to Mexico. *See* Government Exhibit 4.[5] On January 14, 2009, a warrant of removal/deportation (Form I-205) was issued. *See* Government Exhibit 6.[6] The Form I-205 indicates that an immigration officer witnessed the Defendant being removed and deported "a foot" at Laredo, Texas. A photograph of the Defendant and his right index fingerprint appears on the document.

---

[4] The Defendant objected to the introduction of this Exhibit, arguing hearsay and violation of the Confrontation Clause as interpreted by the Supreme Court in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (June 25, 2009).

[5] The Defendant also objected to the introduction of this Exhibit, arguing hearsay and violation of the Confrontation Clause as interpreted by the Supreme Court in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (June 25, 2009).

[6] The Defendant also objected to the introduction of this Exhibit, arguing hearsay and violation of the Confrontation Clause as interpreted by the Supreme Court in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (June 25, 2009).

7.      Ralph T. Looney, a latent print examiner with the San Antonio Police Department, testified that he examined various specimens (the January 2009 fingerprint and a fingerprint card of prints taken January 4, 2010[7]) and concluded that the "inked impressions on the above mentioned documents were all made by the same person."

8.      Charles Munoz, an employee of the Citizenship and Immigration Services, testified that he searched the A-file of the Defendant for any record that the Defendant obtained consent for re-admission, but he did not locate any such record. He also testified that he searched various computer databases[8], but did not locate any such record. The Certificate of Nonexistence of Record (CNR) was prepared by another employee, Alejandro H. Albarran.[9]

9.      Defendant objected to the introduction of the CNR (Government Exhibit 9), arguing that the introduction of the document violated his Sixth Amendment rights under the Confrontation Clause. Defendant relied upon the Fifth Circuit's recent decision in *U.S. v. Martinez-Rios*, 595 F.3d 581 (5th Cir. 2010). In *Martinez-Rios*, "the government introduced the contents of Martinez-Rios's alien file, or 'A-file,' which is the repository of immigration

---

[7] Government Exhibit 16.

[8] Enforce Alien Removal Module (EARM), Computer Linked Application Information Management System (CLAIMS), the Central Index System (CIS), and the National File Tracking System (NFTS).

[9] Mr. Albarran did not testify at trial. Mr. Munoz testified that he performed the actual search of the A-file and computer databases and that Mr. Albarran merely prepared and signed the CNR. The Defendant also objected to the introduction of this Exhibit, arguing hearsay and violation of the Confrontation Clause as interpreted by the Supreme Court in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (June 25, 2009).

records on an alien. The A-file includes the alien number assigned when an individual first encounters immigration authorities, along with aliases, fingerprints, applications for citizenship, and removal documents. Border Patrol Agent Ramiro Melendez identified Martinez-Rios's A-file, No. A-21490464, which contained a CNR, authored by A.W. Blakeway, a field office director with the U.S. Citizenship and Immigration Services." *Id.* at 583. "Blakeway did not testify at Martinez-Rios's trial, despite having prepared the CNR. The government introduced the CNR through the testimony of Melendez, who explained how a CNR is ordinarily prepared. Melendez personally reviewed Martinez-Rios's A-file but did not conduct a search of any of the computerized databases associated with the CNR." *Id.* at 586. Reviewing the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, --- U.S. ----, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Fifth Circuit concluded that CNR's are not routinely produced in the course of government business, but instead are exclusively generated for use at trial. Therefore they are "testimonial" as that term is defined in *Crawford v. Washington*, 541 U.S. 36 (2004). Accordingly, the Fifth Circuit concluded that "Martinez-Rios was unable to cross-examine the person who had prepared a testimonial statement to be used against him at trial. Therefore, the district court erred in admitting the CNR without providing the testimony of the records analyst." *Id.*

    10.    In this case, although Defendant was not able to cross examine Albarran (the individual who actually signed the CNR), Defendant was able to

5

cross examine another Immigration Service Assistant (Munoz) who works alongside Albarran. Munoz testified that he not only reviewed the A-file, but also reviewed the various databases to assure himself that a diligent search was performed and there was no record found to indicate that Defendant obtained consent for re-admission.[10] Munoz was cross examined by Defendant's counsel. Accordingly, this Court overrules Defendant's objection to the introduction of Government Exhibit 9.

11.  Defendant also objected to the remainder of the Government's Exhibits which came from Defendant's A-file (Government Exhibits 1, 3, 4, 5, and 6) as violating his Sixth Amendment rights under the Confrontation Clause. Defendant also lodged hearsay objections to the documents.

In *Martinez-Rios*, the Fifth Circuit did not specifically address whether the Confrontation Clause was applicable to the A-file. The Fifth Circuit, however, did state the following:

> Further, the holding in Melendez-Diaz relies on a key distinction between records that are kept in the ordinary course of business and those that are specifically produced for use at trial. The latter are "testimonial" and are at the heart of statements triggering the Confrontation Clause. CNR's are not routinely produced in the

---

[10] Even if the Court erred in admitting the CNR, Munoz was competent to testify as to his review of the A-file and databases. *See U.S. v. Fajardo-Fajardo*, 594 F.3d 1005 (8th Cir. 2010) (CNR is not required for the government to satisfy its burden of proof, as long as an immigration official testifies at trial about the absence of entry documents and the relevant circumstances indicate an adequate search was performed, the testimony is sufficient and is not hearsay). *See also U.S. v. Vargas-Victoria*, 345 Fed. Appx. 307 (9th Cir. 2009) (Any Confrontation Clause error resulting from admission of CNR was harmless, where federal agent testified at trial that he had personally searched defendant's A-File and Central Index System but found no record that defendant had sought consent to reapply for admission.); *U.S. v. Valdez-Maltos*, 443 F.3d 910 (5th Cir. 2006) (testimony of border patrol agent that there was no record of alien's application for permission to enter the United States was admissible under hearsay exception providing for proof of the absence of a record by certification).

6

course of government business but instead are exclusively generated for use at trial. They are, therefore, testimonial.

*Id.* at 586. Unlike the CNR, Government Exhibit 1 (a 2008 I-215), Government Exhibit 3 (a 2008 Notice to Appear), Government Exhibit 4 (a January 2009 Order of an Immigration Judge), Government Exhibit 5 (a January 2009 I-294 Warning to Alien Ordered Removed or Deported), and Government Exhibit 6 (January 2009 Warrant of Removal/Deportation) were not generated for use in this 2010 criminal proceeding. Accordingly these documents are not testimonial.[11] In addition, these records were introduced by Shawn Michaels, who testified that he was one of the custodians of these records and that the records were accurate copies of those found in the Defendant's A-file. Defendant's objections are overruled.[12]

12.     Defendant also objects to the expert testimony of Ralph Looney, the SAPD latent print examiner. Defendant, relying upon a study performed by the National Academy of Science titled Strengthening Forensic Science in the United

---

[11] *See U.S. v. Fernandez-Gomez*, 341 Fed. Appx. 949 (4th Cir. 2009) (warrants of deportation are nontestimonial and are therefore not subject to the requirements of the Confrontation Clause); *U.S. v. Santana-Villasenor*, 336 Fed. Appx. 728 (9th Cir. 2009) (warrant of deportation did not violate defendant's Confrontation Clause rights); *U.S. v. Diaz-Gutierrez*, 2009 WL 4572780 (4th Cir. 2009) (admission of warrant of deportation did not violate Confrontation Clause); *U.S. v. Burgos*, 539 F.3d 641 (7th Cir. 2008) (warrant of deportation was nontestimonial business record not subject to Confrontation Clause); *U.S. v. Valdez-Maltos*, 443 F.3d 910 (5th Cir. 2006) (warrants of deportation were analogous to nontestimonial business records).

[12] *See U.S. v. Estrada-Eliverio,* 583 F.3d 669 (9th Cir. 2009) ("FRE 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file. *See* Fed.R.Evid. 901 advisory committee's note ('Public records are regularly authenticated by proof of custody, without more.'). Agent Perez's testimony was sufficient to make a prima facie case for authenticity."); *U.S. v. Fernandez-Gomez*, 341 Fed. Appx. 949 (4th Cir. 2009) (warrants of deportation are excepted from hearsay rule); *U.S. v. Avila-Sifuentes*, 237 Fed. Appx. 971 (5th Cir. 2007) (warrants of deportation are excepted from the hearsay rule and are admissible).

States, a Path Forward, suggests that the fingerprint evidence in this case is not reliable. Mr. Looney conceded at trial that the true value of the evidence is determined by the quality of the latent fingerprint image. Nevertheless, he opined with great confidence that in this case the "inked impressions on the above mentioned documents were all made by the same person." Any objection to this expert opinion is overruled.

13. The government was required to prove each of the following elements beyond a reasonable doubt: (1) Defendant was an alien; (2) he had been denied admission, excluded, deported, or removed or had departed the United States while an order of exclusion, deportation, or removal was outstanding; (3) he had not received consent to reapply for admission or demonstrated that such prior consent was not required; and (4) he subsequently entered, attempted to enter, or was at any time found in the United States. *U.S. v. Martinez-Rios*, 595 F.3d 581, 583 (5th Cir. 2010).

14. The Court finds that the Defendant was a citizen of the Republic of Mexico. *See* Government Exhibits 1, 4, 9, 10 and 16.

15. The Court finds that the Defendant had been removed or deported from the United States to Mexico on or about January 14, 2009. *See* Government Exhibits 4, 5, and 6.

16. The Court finds that the Defendant was found in the United States on or about January 2, 2010. Testimony of SAPD Officer Adrian Owens; Testimony of ICE Agent Shawn Michaels. *See also* Government Exhibits 1 and

16.

17.     The Court finds that the Attorney General of the United States had not expressly consented to the Defendant's reapplying for admission.  Testimony of Charles Munoz.  *See also* Government Exhibit 9.

18.     The Defendant is guilty of violating 8 U.S.C. § 1326(a).

It is so ORDERED.

SIGNED this 13th day of April, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE